IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAKA A. MATTHEWS, | : | No. 4:08-CV-0964 |
| Plaintiff | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| SERGEANT VILLELLA, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

February 6, 2009

This matter is before the Court on the Report and Recommendation of

Magistrate Judge Thomas M. Blewitt (Doc. 15), which recommends that this action

be dismissed as against certain defendants pursuant to 18 U.S.C. § 1915A and

allowed to proceed as against other defendants. For the reasons set forth below,

the Report and Recommendation will be adopted in part and rejected in part, and

this action will be dismissed in its entirety. Also before the Court are a series of

motions filed by the plaintiff Chaka Matthews, which are disposed of as indicated

below.

## I.    BACKGROUND

The gravamen of Matthews' *pro se* complaint under 42 U.S.C. § 1983 is that

he was subject to excessive use of force in violation of the Eighth Amendment

while confined at the State Correctional Institution at Waymart ("SCI-Waymart").[1]

Matthews alleges that on December 5, 2007, while coming from the shower in the

restricted housing unit ("RHU") in handcuffs, he was ordered by Corrections

Officers Villella and Heberling to enter cell 1013.[2]  (Compl.., Doc. 1 ¶¶ 8-9.)

Matthews further alleges that after he was placed in the cell and the door shut, the

cell door slot or "wicker" was opened by Officer Heberling and he was ordered to

place his hands through to have his handcuffs removed.  (*Id.* at ¶¶ 10-12.)

Matthews alleges that he placed his hands through the wicker and that Officer

Villella "took the liberty to assault Matthews with a billyclub."  (*Id.* at ¶ 13.)

Matthews asked Officer Villella why he hit him, but Officer Villella did not

respond.  (*Id.* at ¶¶ 16-17.)  Matthews alleges that Officer Heberling also asked

Officer Villella "what are you doing."  (*Id.* at ¶ 18.)  Matthews alleges that Officer

Villella later returned, telling Matthews "I got you good," and bending his index

finger.  (*Id.* at ¶ 22.)  Matthews states that neither Officer Heberling nor any other

RHU staff member reported the incident.  (*Id.* at ¶ 19.)

---

[1] Matthews is currently confined at SCI-Somerset.

[2] The Report and Recommendation screened Matthews's complaint pursuant to 28 U.S.C. § 1915A.  "The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions."  *Courteau v. United States*, 287 Fed. Appx. 159, 163 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).  Therefore,  the Court accepts all factual allegations of the complaint as true, and construes the complaint in the light most favorable to the plaintiff.  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Matthews states that Officer Villella "smashed the pointer finger" of his right hand, and that this action "inflammed" [sic] his "prior injury of a broken tendons [sic]" in the hand.  (*Id.* at ¶¶ 15, 20-21.)  Matthews alleges that he showed his finger to Officer Villella who said "your finger don't look broken to me" and walked away.  (*Id.* at ¶ 23-24.)  Nevertheless, Matthews requested and was given x-rays of his finger.  (*Id.* at ¶¶ 25-26.)  However, Matthews complains that despite his requests for "a splint to support the bent/broken tendons," he was instead given a buddy wrap, which he alleges was "insufficient for the type of injury" he sustained.  (*Id.* at ¶ 27.)

Matthews's complaint asserts an excessive use of force cause of action and names as defendants Officer Villella, Officer Heberling, Corrections Officer Heidi, Corrections Officer Evans, and "RHU Unit Staff."  (*Id.* at Caption, ¶ 28.) Matthews requests the following relief:  (1) a declaration that defendants violated his constitutional rights; (2) termination of Officer Villella and correctional officers that witnessed the December 5, 2007 incident but did not report it; (3) criminal charges against these officers; (4) that the yearly salaries of all these officers be paid to him as compensation for his pain and suffering; and (5) a formal

written apology from the Department of Corrections.  (*Id.* at ¶ 30.)  Matthews also

generally requests compensatory and punitive damages.[3]  (*Id.* at ¶¶ 31, 32.)

## II.    REPORT AND RECOMMENDATION

The Report and Recommendation first recommends that Matthews's claims

against the unnamed "RHU Unit Staff" defendants be dismissed without prejudice

to Matthews's ability to name such additional defendants once they are identified.

(Doc. 15 at 8-9.)  Next, it is recommended that Matthews's claims against Officers

Heidi and Evans be dismissed for failure to allege their personal involvement in

any alleged constitutional violation.  (*Id.* at 9-10.)  It is further recommended that

Matthews' excessive use of force claims against Officers Villella and Heberling be

allowed to proceed.  Finally, it is recommended that Matthews's improper requests

for criminal charges to be brought against the defendants, for their termination, and

for their salaries to be paid to him be stricken, and that his claims for monetary

damages against the defendants in their official capacities be dismissed as barred

by sovereign immunity.

In response to the Report and Recommendation, Matthews first filed a

submission styled an amended complaint (Doc. 17).  This submission, however,

---

[3] Matthews has also submitted a document styled "Amended Complaint for Compensatory and Punitive Damages."  (Doc. 23.)  This document is identical to Matthews's initial complaint except that it specifically requests $100,000 in compensatory damages and $400,000 in punitive damages.  (*Id.* at ¶¶ 31-32.)

only objects to the recommended dismissal of his claims against Officers Heidi and Evans, and therefore, the Court will construe it as objections to the Report and Recommendation.  Matthews also filed further objections to the Report and Recommendation.  (Doc. 18)

Because Matthews has filed objections, the Court will make a *de novo* review of the Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  Under this standard, the Court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  *Id.*  Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).  For the following reasons, the Court will adopt in part and reject in part the Magistrate Judge's recommends as set forth below.

As noted above, in screening a prisoner's complaint pursuant to § 1915A, the Court applies the same standard employed in ruling on a motion under Fed. R. Civ. P. 12(b)(6).  *Courteau*, 287 Fed. Appx. at 163.  In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true,

construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231.  "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss."  *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).

### A.      Improper Requests for Relief

The Court will adopt the Magistrate Judge's recommendation that Matthews's request for criminal charges to be brought against the defendants, for their termination, and for their salaries to be paid to him be stricken.  "Plaintiff, a private citizen, is without authority to prosecute criminal charges, and this Court is without authority to do so on Plaintiff's behalf, since it is well established that private citizens can neither bring a direct criminal action against another person nor can they petition the federal courts to compel the criminal prosecution of another person."  *Caracter v. Avshalumov*, 2006 WL 3231465, at *3 (D.N.J. Nov. 8, 2006) (citations omitted).  The Court is also without authority to order the defendants' employment terminated, and the amount of damages, if any, to which Matthews is entitled will be determined by proper proof in this action.  Matthews's improper requests for relief will be stricken.

### B.      Official Capacity Claims

The Court will also adopt the Magistrate Judge's recommendation that Matthews's claims against the defendants in their official capacities be dismissed. The Eleventh Amendment "make states generally immune from suit by private parties in federal court*." MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). The Eleventh Amendment also bars a suit against a state official in his or her official capacity because it "is not a suit against the official but rather is a suit against the official's office. As such it is it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

"Eleventh Amendment immunity is subject to three exceptions: 1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm.*, 271 F.3d at 503. The first and third exceptions are plainly inapplicable in this case. As to the second exception, under 42 Pa. C.S.A. § 8522, the Pennsylvania has waived sovereign immunity "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" in nine specific circumstances, including claims arising out of "[t]he care, custody or control of personal property

in the possession or control of Commonwealth parties."  42 Pa. C.S.A. § 8522(a),

(b)(3).

Matthews argues that Pennsylvania's "personal property" waiver of

immunity applies to his claims "because inmates are state property."  (Doc. 18 ¶

11.)  As an initial matter, the exceptions to immunity set forth in § 8522 apply only

to negligent acts, *see Clark v. SEPTA*, 691 A.2d 988, 992 (Pa. Commw. Ct. 1997);

*Rodriguez v. Smith*, 2005 WL 1484591, at *8 (E.D. Pa. June 21, 2005), and

Matthews claims that Officer Vallella assaulted him intentionally, not negligently.

In addition, the personal property exception applies only where the personal

property itself is alleged to have caused the injury.  *See Sugalski v. Pennsylvania*,

569 A.2d 1017, 1019 (Pa. Commw. Ct. 1990).  Most importantly, however,

inmates are decidedly not "state property."  *See* U.S. Const., Amend. XIII

("Neither slavery nor involuntary servitude, except as a punishment for crime

whereof the party shall have been duly convicted, shall exist within the United

States, or any place subject to their jurisdiction.").  Matthews is incarcerated as

punishment for a crime against the Commonwealth of Pennsylvania; he is not the

property of the Commonwealth.  None of the exceptions to Eleventh Amendment

sovereign immunity apply in this case, and therefore, Matthews's claims against all

defendants in their official capacities will be dismissed.

8

### C.   Claim Against Officer Villella

The Court will reject the Magistrate Judge's recommendation that Matthews's claim against Officer Villella be allowed to proceed. After *de novo* review of Matthew's complaint, the Court finds that he has failed to state a claim against Officer Villella.

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The prisoner need not show significant injury to state an excessive use of force claim. *Hudson*, 503 U.S. at 8, 10. However, [t]hat is not to say that every malevolent touch by a prison

guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (citations omitted).

Accepting Matthews's allegations as true, as the Court must at this stage of the proceedings, several factors weigh in favor of allowing his claim against Officer Vallella to proceed. From the complaint, there appears to have been little need for the application of force or threat to the safety of staff and inmates, as Matthews was inside his cell at the time of the incident. These factors, however, are outweighed by consideration of the minor use of force by Officer Vallella and the minor injury sustained by Matthews. Officer Vallella struck Matthews once, and did not cause him any injury but rather "inflamed" an old injury, which caused Matthews's finger to become swollen and required it being buddy taped.[4] Officer Vallella's alleged conduct, although undoubtedly unprofessional and improper, does not rise to the level of the "malicious" or "sadistic" use of force "repugnant to the conscience of mankind" which is required to meet the constitutional standard for an excessive use of force claim under the Eighth Amendment's prohibition

---

[4] As the Report and Recommendation notes "buddy taping" or "buddy wrapping" is the taping of an injured finger to an adjoining, uninjured finger. (Doc. 15 at 5 n.5.)

against "cruel and unusual" punishment.  "There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically."  *Reyes v. Chinnici*, 54 Fed. Appx. 44, 48 (3d Cir. 2002).  Matthews's complaint presents such a case.  As one court in this circuit has noted "Eighth Amendment protections ... have never been afforded in cases of minor injury and minor use of force, even in the face of allegedly immoral conduct."  *Thomas v. Ferguson*, 361 F. Supp. 2d 435, 442 (D.N.J. 2004) (collecting cases); *see also Simmons v. Beard*, 2008 WL 2275536, at *7 (W.D. Pa. May 30, 2008) (collecting cases involving allegations of the use of more force than alleged here which were found not to meet Eighth Amendment standard); *Johnson v. Coventry*, 2006 WL 176099, at *2-3 (D. Del. Jan. 25, 2006) (same).  Although Matthews describes the incident with colorful terms and conclusory labels, the facts as alleged in the complaint do not rise to the level of a constitutional violation. *See Wesley v. Dombrowski*, 2007 WL 2571525, at *12 & n.30 (E.D. Pa. Aug. 31, 2007). Matthews's claim against Officer Vallella will therefore be dismissed.  Because the essential allegations surrounding the incident in question fail to state an excessive use of force claim, amendment of the complaint would be futile, and therefore, dismissal will be with prejudice.  *Phillips*, 515 F.3d at 236.

### D.     Claims Against Officer Heberling

The Court will also reject the Magistrate Judge's recommendation that Matthews's claim against Officer Heberling be allowed to proceed.  Again based upon *de novo* review of Matthew's complaint, the Court finds that he has failed to state a claim against Officer Heberling.

The Court will liberally construe Matthews's allegations that Officer Heberling witnessed Officer Vallella's actions and failed to report the incident as asserting both a "failure to protect" claim and "failure to intervene" claim.  But however construed, Matthews's complaint fails to state a claim against Officer Heberling.

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted).  For an inmate to prevail on an Eighth Amendment failure-to-protect claim, he must first demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm;" that is, the harm must be "objectively sufficiently serious."  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (citing *Farmer*, 511 U.S. at 834).  The prisoner must also meet a subjective element by showing that the prison officials involved had sufficiently culpable state of mind.  *Id.* (citing *Farmer*, 511 U.S. at 838).  "Specifically, the

12

inmate must show that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* In sum, the prisoner must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Id.* "The deliberate indifference standard as set out in *Farmer* is a high one." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 137 (3d Cir. 2001).

In this case, Matthews has not met either the objective or subjective element of an Eighth Amendment claim against Officer Heberling. Matthews has not shown an objectively sufficiently serious risk of harm because, as discussed above, the force used and injury suffered were minor. Moreover, "[a] pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents." *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985) (citation omitted). The isolated incident complained of in this case does not demonstrate substantial risk of which Officer Heberling could have been aware. Matthews has also not sufficiently alleged that Officer Heberling acted with deliberate indifference. Matthews has not alleged that Officer Heberling had any knowledge that Officer Vallella would assault him. In fact, the allegations of the complaint make clear that Officer Heberling was surprised by Officer Vallella's actions. Officer

Heberling could not have been deliberately indifferent to risk of which he was unaware, and therefore, Matthews has failed to state a failure-to-protect claim against Officer Heberling.  *See, e.g.*, *Ali v. Kasprenski*, 2008 WL 495519, at *2 (D. Del. Feb. 19, 2008).

If construed as a failure-to-intervene claim, Matthews's claim against Officer Heberling also fails.  Courts have held that an officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, and that failure to so intervene when such a constitutional violation takes place subjects the officer directly to liability under § 1983.  *See Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002).  "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene."  *Id.* at 651.  In this case, even assuming an excessive use of force by Officer Vallella, there is no allegation that Officer Heberling had any knowledge of what Officer Vallella would do, nor is there any allegation that Officer Heberling had any opportunity to intervene in the sudden and momentary use of force by Officer Vallella.  Officer Heberling had no opportunity to intervene to protect Matthews from any alleged constitutional violation, and therefore, any claim based on his purported failure to do so will be dismissed.  As with Matthews's claim against Officer Vallella, amendment of his

14

claims against Officer Heberling would be futile, and therefore, dismissal will be with prejudice.

### E.      Claims Against Officers Heidi and Evans

The Court will adopt the Magistrate Judge's recommendation that Matthews's claims against Officers Heidi and Evans be dismissed.  "An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*."  *Evancho*, 423 F.3d at 353 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Officers Heidi and Evans are mentioned only in the caption of the complaint.  Matthews's complaint makes no factual allegations against these defendants whatsoever, and therefore his claims against these defendants must be dismissed.

In his objections to the Report and Recommendation, Matthews objects to dismissal of his claims against Officers Heidi and Evans and sets forth additional allegations to support these claims.  Specifically, Matthews alleges that Officer Heidi was present during the December 5, 2007 incident and witnessed Officer Vallella's purported assault on Matthews.  (Doc. 17 ¶ 3; Doc. 18 ¶ 3.)  Matthews also alleges that at the time of the incident Officer Evans was in the control center, which has video cameras monitoring the RHU and that after the incident Officer

15

Evans said "woah!!, one thousand points for hitting 'Chaka Khan'" and "called Sgt. Villella Mr. Mario as if this was a video game." (Doc. 17 ¶ 4; Doc. 18 ¶ 2.)

As an initial matter, it is axiomatic that a complaint may not be amended by the plaintiff through a brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Matthews's allegations regarding Officers Heidi and Evans do not appear in his complaint and therefore his claims against these officers in that complaint must be dismissed.

Moreover, even if the new allegations against Officers Heidi and Evans are considered, Matthews's claims against these defendants fail for the same reasons that his claim against Officer Heberling fails. If construed as failure-to-protect claims, Matthews has not alleged a sufficiently serious risk of harm to meet the requisite objective element, nor has he alleged that Officers Heidi or Evans had any knowledge of this risk as required to demonstrate deliberate indifference. If construed failure-to-intervene claims, Matthews has failed allege that Officers Heidi or Evans had any realistic and reasonable opportunity to intervene in Officer Vallella's actions. In fact, the allegations set forth in Matthews's oppositions to the Report and Recommendation make clear that these defendants, who were at some distance from the altercation between Officer Vallella and Matthews, could not have intervened. Because Matthews's attempted amendments to his complaint

regarding Officers Heidi and Evans still fail to state a claim against these defendants, it is clear that further attempts at amendment would be futile, and dismissal will be with prejudice.

### F.    Claims Against Unnamed Defendants

The Court will also adopt the Magistrate Judge's recommendation that Matthews's claims against the unnamed "RHU Unit Staff" defendants be dismissed.  There is no way to effect service on these unnamed defendants, and in any case, fictitiously named defendants must eventually be dismissed if discovery yields no identities.  *Arnone v. Luzerne County Sheriff's Dep't*, 2008 WL 4533683, at \*4 (M.D. Pa. Oct. 6, 2008).  Moreover, it is apparent that any claims against other RHU staff members would be based on the same allegations as the claims against Officers Heberling, Heidi, and Evans:  that they witnessed the incident at issue and failed to report it.  Any such claims would fail for the reasons discussed above, and therefore the claims against the unnamed RHU Unit Staff defendants will also be dismissed with prejudice.

In sum, Matthews's complaint will be dismissed with prejudice in its entirety.  The alleged conduct of the SCI-Waymart staff and Officer Villella in particular, if true, is disgraceful and wrong.  As the Supreme Court has made clear, however, not every bad act by a prison guard rises to the level of a constitutional

violation.  *See Hudson*, 503 U.S. at 9 ("Not every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights.").  The test of the Eighth Amendment's "cruel and unusual"

standard is a strict one.  *See Thomas*, 361 F. Supp. 2d at 441 (quoting *Rhodes v.

Robinson*, 612 F.2d 766, 771 (3d Cir. 1979)).  The defendants' alleged conduct,

although reprehensible, does not meet this standard, and therefore, Matthews's

complaint will be dismissed.

## II.    PENDING MOTIONS

Several motions from Matthews are also currently pending before the Court.

Given the dismissal of his claims, these motions may be denied as moot.  Never-

theless, the Court will briefly address them below.

### A.    Motion for Appointment of Counsel

Matthews has filed three motions for appointment of counsel (Docs. 19, 20,

32).[5]  As stated, given the dismissal of his claims with prejudice, the issue of

appointment of counsel is moot.

Moreover, if considered on the merits, Matthews's motions for counsel

would be denied.  "Indigent civil litigants possess neither a constitutional nor a

---

[5] Documents 19 and 20 appear to be the same motion, which was mistakenly docketed twice.

18

statutory right to appointed counsel," but a district court has broad discretion under

28 U.S.C. § 1915(e)(1) to "request an attorney to represent any person unable to

afford counsel." *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002)

(citations omitted).  In *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir.1993), the Third

Circuit developed a list of criteria to aid the district courts in weighing the

appointment of counsel for indigent civil litigants.  *Montgomery*, 294 F.3d at 498.

"As a threshold matter, a district court must assess whether the claimant's case has

some arguable merit in fact and law."  *Id.* at 498-99 (citing *Tabron*, 6 F.3d at 155).

 If the party requesting appointment of counsel overcomes this threshold hurdle,

the court should also consider:

1. the plaintiff's ability to present his or her own case;

2. the difficulty of the particular legal issues;

3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

4. the plaintiff's capacity to retain counsel on his or her own behalf;

5. the extent to which a case is likely to turn on credibility determinations; and

6. whether the case will require testimony from expert witnesses.

*Id.* at 499 (citing *Tabron*, 6 F.3d at 155-57).  The Third Circuit has also suggested

that a district court consider its own willingness to aid the indigent party in

19

presenting his case and the supply of attorneys willing to take court-appointed cases in the geographic area of the litigation, taking into account the fact that such counsel, especially in non-urban areas, may be scarce. *Gordon v. Gonzalez*, 232 Fed. Appx. 153, 156 n.4 (3d Cir. 2007); *see also Montgomery*, 294 F.3d at 499 (stating "we have cautioned that courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases").

Matthews's request for counsel fails to clear the threshold inquiry. For the reasons set forth above, his complaint will be dismissed in its entirety, and his claims facially appear to lack merit. Even if Matthews were able to clear this initial hurdle, his claims are not at all complex, and neither significant factual investigation nor or expert testimony would be required. Moreover, from the filings he has submitted in this action, it is clear that Matthews is more than able to cogently present his case to the Court. For these reasons, Matthews's request for counsel will be denied.

**B.     Motion to Compel**

Matthews filed interrogatories (Doc. 21) with the Court, but did not serve them on the defendants.  When the interrogatories were not answered, Matthews filed a motion to compel (Doc. 28).  Matthews's complaint has been screened as required by 28 U.S.C. § 1915A, and as further required by that statute, will be dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b).  The complaint has not been, and will not be, served on the defendants.  Thus the defendants have not received notice of Matthew's claims or his discovery requests.  This explains their failure to respond to Matthews's interrogatories and why his motion to compel will be denied.

**C.     Motion for Temporary Restraining Order and Preliminary Injunction**

Matthews filed a two-paragraph submission styled "Injunction for Restraining Order from Harassment and Manufactured Misconduct Reports" by which he seeks a temporary restraining order and preliminary injunction to prevent "harassment from all corrections officers and staff that are in retaliatory mode and retribution" against him for filing this action.  (Doc. 26.)

A district court may permissibly grant the "extraordinary remedy" of a temporary restraining order or preliminary injunction only if "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the

21

plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).  The moving party must produce evidence sufficient to convince the court that all four factors favor injunctive relief, and the court must endeavor to balance all four factors; however, as a practical matter, likelihood of success on the merits and irreparable injury are the most important factors.  *See Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 & n.8 (3d Cir. 1994).

Matthews's request for preliminary relief fails because, as discussed above, he has no chance of success on the merits of his claims.  Moreover, Matthews has failed to put forth any support for his request for an injunction beyond the bare conclusory allegation that staff are "writing manufactured misconduct reports ... to sabotage my case."  The defendants have not even been served with Matthews's case, and he has certainly not been deterred or prevented from litigating this action. Matthews's motion for a temporary restraining order and preliminary injunction will be denied.

### D.    "Motion  for Inquisition"

Matthews filed a submission styled "Motion for Inquisition and Status of Case."  (Doc. 27.)  Although captioned and docketed as a motion, this submission is simply an inquiry as to the status of the case.  To the extent the submission is docketed as a motion, it will be denied.

### E.    Motion for Default

Finally, Matthews has filed two motions for entry of default against the defendants (Docs. 29, 33).[6]  As noted above, Matthews's complaint has been screened pursuant to 28 U.S.C. § 1915A, and because his complaint will be dismissed for failure to state a claim upon which relief may be granted, it will not be served on the defendants.  The defendants were therefore under no obligation to answer or otherwise respond to the complaint, and thus, entry of default against them is improper.  Matthews's motions for default will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court will adopt the Report and Recommendation in part and reject it in part.  Matthews's complaint will be dismissed in its entirety.  For the reasons stated above, dismissal will be with prejudice.  In addition, Matthews's motions for appointment of counsel, motion to

---

[6] Although docketed on different dates, these two submissions are identical.

compel, motion for a temporary restraining order and preliminary injunction, motion for inquisition, and motions for default will be denied.  An appropriate order will enter.